J. Simpson Dean v. Commissioner.
Dean v. Commissioner
Docket No. 19863.
United States Tax Court
1950 Tax Ct. Memo LEXIS 238; 9 T.C.M. (CCH) 260; T.C.M. (RIA) 50075; March 28, 1950
*238 Laurence Graves, Esq., 20 Exchange Place, New York 5, N. Y., for the petitioner. E. M. Woolf, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $13,861.35 in petitioner's income and victory tax liability for the calendar year 1943. Pursuant to the provisions of the Current Tax Payment Act of 1943, the deficiency determined herein involves adjustments to income for each of the years 1942 and 1943. The issue for determination is the propriety of increasing petitioner's reported compensation from Nemours Corporation, a personal holding company owned by petitioner and his wife, by an amount described as "rental value" of a home property owned by Nemours and occupied by petitioner and his family, less "amounts expended by Nemours Corporation for repairs and not deducted on its return." By affirmative allegation, respondent's answer raises the issue of whether the decisions of this Court in Paulina duPont Dean and J. Simpson Dean, Docket Nos. 9012 and 9013, reported in , bar a decision on the merits of the first issue because of the doctrine of res judicata. Findings of Fact
*239 Petitioner, J. Simpson Dean, residing in Montchanin, Delaware, filed his Federal income tax returns for the calendar years in question with the collector of internal revenue for the district of Delaware. In 1924, petitioner and his wife, Paulina duPont Dean, formed a personal holding corporation entitled Nemours Corporation (hereinafter referred to as Nemours), with 7,249 shares of the outstanding common capital stock owned by petitioner and the remaining 28,923 outstanding shares owned by the wife. At all times since its incorporation petitioner was president of Nemours and his wife was vice president. In 1942 and 1943 Nemours held securities, oil and gas properties, real estate and horses. Its headquarters were in Wilmington, Delaware, and it maintained an office in Shreveport, Louisiana. The supervision of the oil and gas investments requires a substantial part of petitioner's time. In February 1942 petitioner sought a commission in the United States Army. The commission first issued in the wrong name in March 1942. In 1942 petitioner was president of the Delaware Steeplechase and Race Association. He was able to be present for its 30-day meeting before being commissioned *240 into the Army in September 1942. Petitioner ceased active participation in the management of Nemours in about February 1942. He was discharged in February 1946. He was assigned to duty in Rome and Syracuse, New York, in 1942 and went overseas in 1943, where he spent about 30 months in the Middle East and Italy. During this time Paulina duPont Dean supervised the management of the affairs of Nemours. Nevertheless, petitioner continued to receive his fixed annual salary of $30,000 a year as president of Nemours, less pay received by him as a member of the Armed Forces. He actually received $29,213.33 in 1942, and $27,400 in 1943 from Nemours while he was absent with the Armed Forces. Prior to her marriage to petitioner, Paulina duPont Dean owned a large home in Montchanin, Delaware. Upon her engagement to marry petitioner she had this property remodeled and renovated. The property comprised the house, a single and double tenant house, greenhouses, garages and other appurtenant buildings, located on thirty-seven landscaped acres. Since their marriage, petitioner, his wife and their family have always lived in this home. She has always managed this property and paid many of the expenses *241 incident to its maintenance and operation. The home property was transferred to Nemours on its creation in 1924, but was transferred back to Paulina duPont in 1925. In 1931 Nemours was indebted to the Chase National Bank of New York in the amount of approximately $600,000. The bank requested and insisted that the Montchanin property which had a cost of $208,781.72 be transferred to Nemours in order to improve its credit standing. The request was complied with. Since 1931, including the years 1939, 1942 and 1943, title to the home property has remained in the corporation. During the calendar years 1942 and 1943, Paulina duPont Dean expended the following amounts in connection with the maintenance of the buildings and grounds of this home property owned by Nemours: 1942
1943
Material for maintenance
of buildings, plumbing
and electrical system
$1,843.87
$1,008.05
Material for maintenance
of grounds, roads, walks,
walls, trees and shrubs
1,066.19
1,748.13
Wages: Outside employees
8,016.20
8,235.85
Inside employees
4,828.17
4,172.39
Heat and light
1,529.40
2,009.87
Other expenditures in connection with the home property were made by Nemours. *242 These expenditures consisted of real estate taxes and major repairs, the latter in the amounts of $2,402.22 in 1942, and $1,255.57 in 1943, none of which, except for the real estate taxes, were claimed as deductions in determining the Federal tax liability of Nemours. No written agreement existed between Nemours and petitioner or his family as to the use of the home property. The Commissioner increased petitioner's income in the amount of $12,000 as the fair rental value of the home property, less the expenditures made by Nemours for major repairs which were not deducted on its return. Petitioner is the same person who was petitioner in Docket No. 9013, which case involved the taxable year 1939 and was consolidated with a case in which his wife was petitioner (Docket No. 9012), and decided August 29, 1947. The record in the prior proceeding (Docket No. 9013), is hereby incorporated by reference. In the prior proceeding one of the issues was stated to be: "Whether the respondent properly increased each petitioner's income by the pro rata share of $12,000, fixed as the rental value of property owned by Nemours Corporation and occupied by petitioners as their residence in the *243 taxable year." The findings in the prior proceeding recite, inter alia: "* * * In the taxable year J. Simpson Dean was president and received a salary of $25,000. Paulina duPont Dean was vice president. She received no salary. * * *
"The respondent added $9,595.16 to the income reported by petitioner Paulina duPont Dean and $2,404.84 to the income reported by petitioner J. Simpson Dean, which he describes in the notices of deficiency as 'Rental Value of Residence.'" With respect to this issue, the opinion holds: "The next issue involves the propriety of the respondent's action in taxing as income to the respective petitioners a pro rata share, based on their stock interests, of the amount of $12,000 as 'Rental Value of Residence.' In 1931 petitioner Paulina duPont Dean owned real property which was occupied by petitioners as a residence. At that time Nemours had a large loan with the Chase National Bank. The bank requested that title to the property be transferred to Nemours to improve its credit standing. This was done and Nemours owned the property in the taxable year. We think the assumed rental value of $12,000 for the residential property occupied by petitioner *244 J. Simpson Dean and his family is not properly taxable to the respective petitioners as income, but is properly taxable to him as additional compensation for services rendered to , affirming . Petitioner Paulina duPont Dean rendered no services to Nemours and received no fixed compensation. The record discloses that the only deduction allowed Nemours for income tax purposes in the taxable year was the sum of $435.73 which it paid for real estate taxes. Petitioner J. Simpson Dean testified that the estimated cost of maintaining the residential property in fair condition averaged approximately $15,000 per year, consisting principally of wages. The only specific item of expenditure shown was the sum of $1,356.24 disbursed in connection with painting the premises in the taxable year. Upon such showing, only the amount of $1,356.24 may properly be allowed as a deduction against the assumed rental value of $12,000. We, therefore, conclude that the difference between these two items, or the sum of $10,643.76, constituted taxable income to petitioner J. Simpson Dean in the taxable year involved." *245 Opinion KERN, Judge: In earlier separately docketed proceedings involving petitioner and his wife for the taxable year 1942, it was concluded that petitioner was taxable on the rental value of the Montchanin property as additional compensation to him from Nemours. No allocation of this rental was made between petitioner and his wife on the basis of their proportionate interests in Nemours, or on any other basis. The present proceeding involving only petitioner presents the identical issue and, on its face, would appear to call for an application of the doctrine of res judicata, (see ; ), asserted by the Commissioner in his answer. Petitioner urges, however, that res judicata is not applicable for several reasons, including the changed situation brought about by petitioner's war service, which required petitioner's wife to assume the supervision of the management of Nemours. Since petitioner continued to be paid his annual salary of $30,000 from Nemours, adjusted by the amount of his pay from the Army, it is difficult to appreciate why the additional rental also might not *246 be attributed to him as additional compensation. In any event, without directly deciding the application of the doctrine res judicata to the present proceeding, we believe that the rule of stare decisis is an equally compelling reason for sustaining respondent here. We perceive no cogent reason for not following our previous decision and opinion on this issue, and have no disposition to do so. Our decision on this matter is, therefore, for the respondent, on the authority of . Decision will be entered under Rule 50.